**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **NADEEN MARIE BOGENRIEF,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 11 cv 02790** |
| | ) | |
| **v.** | ) | **Magistrate Judge Susan E. Cox** |
| | ) | |
| **MICHAEL J. ASTRUE, Commissioner of** | ) | |
| **Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Nadeen Marie Bogenrief seeks judicial review of a final decision denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act.[1] The parties have filed cross-motions for summary judgment.[2] Mrs. Bogenrief seeks a judgment remanding Defendant's, Commissioner Michael J. Astrue ("Commissioner"), denial of disability insurance benefits ("DIB") and a finding that Mrs. Bogenrief was disabled through April 2009. The Commissioner seeks a judgment affirming his decision. For the reasons set forth below, Mrs. Bogenrief's motion [dkt. 21] is granted and the Commissioner's motion [dkt. 23] is denied.

PROCEDURAL HISTORY

On January 29, 2008, Mrs. Bogenrief filed an application for DIB.[3] Mrs. Bogenrief alleged she was disabled as of March 14, 2007 and remained disabled through the time of her application.[4] On April 11, 2008, the Commissioner denied Mrs. Bogenrief's application.[5] On June 10, 2008, the Commissioner denied Mrs. Bogenrief's application on reconsideration.[6] Mrs.

---

[1] 42 U.S.C. § 405(g).
[2] Mrs. Bogenrief's Mot.[dkt. 21]; Commissioner's Mot.[dkt. 23].
[3] R. at 132.
[4] *Id.*
[5] R. at 81.
[6] R. at 88.

Bogenrief requested a hearing and a hearing was held before Administrative Law Judge Mary Ann Poulose ("ALJ Poulose") on January 14, 2009.[7] On October 28, 2009, ALJ Poulose issued a decision denying Mrs. Bogenrief DIB.[8] On February 3, 2011, Mrs. Bogenrief sought review of ALJ Poulose's decision by the Appeals Council.[9] On March 24, 2011, the Appeals Council denied Mrs. Bogenrief's request.[10] ALJ Poulose's October 28, 2009 decision stands as the final decision of the Commissioner. On April 27, 2011, Mrs. Bogenrief filed this action seeking review of ALJ Poulose's decision.[11]

STATEMENT OF FACTS

Mrs. Bogenrief was born on September 26, 1963.[12] She is married to Todd Bogenrief and has a daughter, who was fifteen at the time of the hearing.[13] Mrs. Bogenrief was previously married and therefore some of her records list her name as "Nadeen Stacy."[14] She has a high school diploma and served in the United States Air Force from December 18, 1981 to September 16, 1985.[15] While in the Air Force, Mrs. Bogenrief trained to become a medical lab technician.[16] From 1993 to 1999, Mrs. Bogenrief worked as a medical lab technician at the Department for Veteran Affairs and between 2000 and 2007 worked as a medical lab technician at Provena Hospitals.[17] Her main responsibilities as a lab tech included running tests on body fluids, training interns and using microscopes to identify cells for diagnostic purposes.[18]

---

[7] R. at 53.
[8] R. at 46.
[9] R. at 5.
[10] R. at 1.
[11] Dkt. 1.
[12] R. at 132.
[13] R. at 56.
[14] R. at 171.
[15] R. at 176.
[16] *Id.*
[17] R. at 137, 179.
[18] R. at 169.

## A.     Prior to March 14, 2007 - Pre-Onset Date

In her disability report, Mrs. Bogenrief alleged her disability stems from a back injury, herniated disc, sciatica, extreme lower right back pain and tingling and numbness in her right foot.[19] She reported that although these conditions first interfered with her work in October 2004, they did not prevent her from working until March 14, 2007, when Mrs. Bogenrief's doctor indicated in a report that he may ask her to stop working.[20] Between October 2004 and March 2007, Mrs. Bogenreif saw various doctors to address her lower back pain.[21] In February 2008, Mrs. Bogenrief had surgery to alleviate the pain, but continues to report that the pain prevents her from working.[22]

By 2005, Mrs. Bogenrief was taking Tylenol on a daily basis and decreased her personal activities to deal with the pain.[23] In 2006, Mrs. Bogenrief was referred to George DePhillips, M.D., S.C. for a neurosurgical consultation.[24] On October 11, 2006, a magnetic resonance image ("MRI") revealed mild facet joint hypertrophy, disc degeneration and a mild diffuse disc bulge.[25] On December 4, 2006, Narayan (Bob) S. Tata, M.D., conducted a lumbar proactive discography, which is an invasive diagnostic procedure used to determine the source of back pain.[26] Dr. Tata concluded that two discs in Mrs. Bogenrief's spine were the primary source of her lower back pain.[27] Mrs. Bogenrief continues to see Dr. Tata for pain management.[28]

---

[19] R. at 168.
[20] Id.
[21] R. at 243-443.
[22] R. at 606.
[23] R. at 248.
[24] R. at 394.
[25] R. at 256.
[26] R. at 374.
[27] Id.
[28] R. at 61.

**B.    March 14, 2007 through February 15, 2008 - Post-Onset Date and Pre-Surgery**

On March 14, 2007, the onset date of disability, Dr. DePhillips recommended that Mrs. Bogenrief wear a brace, attend physical therapy and indicated in his notes that he may ask Mrs. Bogenrief to discontinue working.[29] Mrs. Bogenrief alleged that she did not work after this date, other than a few days. On April 18, 2007, Mrs. Bogenrief stopped physical therapy because she claimed it was not reducing the pain.[30] In March and April 2007, Mrs. Bogenrief received two epidural steroid injections to help ease the pain.

**C.    After February 15, 2008 - Post-Surgery**

On February 15, 2008, Douglas Johnson, M.D. performed surgery on Mrs. Bogenrief.[31] During surgery, Dr. Johnson removed a muscle, bone, disc and detached a ligament.[32] Post-surgery Mrs. Bogenrief was prescribed physical therapy and could only sit for twenty minutes.[33] In March 2008, Mrs. Bogenrief could walk for five minutes without difficulty and reported no lower back pain. She could also sit continuously for thirty minutes, take a short walk and then sit for another thirty minutes.[34] In May of 2008, Mrs. Bogenrief reported an improvement in her symptoms and that she was able to walk on her toes and heels without difficulty.[35] On May 22, 2008, a State Agency Medical Consultant, Francis Vincent, M.D., signed a report that indicated Mrs. Bogenrief continued to have pain in her right leg and buttocks and was able to walk for fifteen minutes.[36] Dr. Francis also indicated that Mrs. Bogenrief will be capable of light work by

---

[29] R. at 393.
[30] *Id.*
[31] R. at 606.
[32] R. at 608.
[33] R. at 607-608.
[34] R. at 806.
[35] R. at 696.
[36] R. at 617.

February 2009. A month later in June 2008, Mrs. Bogenrief reported minimal lower back pain, but that the pain remained constant and varied in intensity.[37] She did not report feeling stronger or that her lower extremity pain subsided.[38] In July 2008, Mrs. Bogenrief's therapy report noted that her back pain was consistent, she was able to sit for twenty-five minutes and stand for fifteen to twenty minutes.[39] By September 2008, in the last therapy report provided, Mrs. Bogenrief reported that she felt stronger and more flexible.[40] She reported that the pain in her lower extremity was daily, but that her back pain was intermittent and non-daily.[41] She was able to sit continuously for twenty-five to thirty minutes, walk continuously for twenty-five to thirty minutes and could stand for ten to twenty minutes.[42] Dr. Tata's goals for her for the following six weeks include sitting for forty-five minutes and walking for forty-five minutes.[43] Despite the fact that Mrs. Bogenrief continued to attend physical therapy through December 2008, there are no other records after September 2008.

## SOCIAL SECURITY REGULATIONS

In considering whether to grant DIB, the ALJ must determine whether the claimant is disabled.[44] The Social Security Regulations prescribe a sequential five-part test for determining whether a claimant is disabled. The ALJ must consider: (1) whether the claimant is presently engage in any substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude gainful activity; (4) whether the claimant is unable to perform his past relevant work; and (5) whether the claimant is

---

[37] R. at 811.
[38] Id.
[39] R. at 812.
[40] R. at 816.
[41] Id.
[42] Id.
[43] Id.
[44] SSR 83-20

unable to perform any other work existing in significant numbers in the national economy.[45] A finding of disability requires an affirmative answer at either step three or step five, while a negative answer at any step, other than step three, precludes a finding of disability.[46]

## ALJ POULOSE'S DECISION

### A.    January 14, 2009 Hearing

ALJ Poulose held a hearing on January 14, 2009.[47] At the hearing, Mrs. Bogenrief was represented by James F. Ferguson, a non-attorney representative.[48] Testimony was received from Mrs. Bogenrief, Mr. Bogenrief, and Julie Bose, a vocational expert ("VE").[49] In his opening statement, Mr. Ferguson stated that Mrs. Bogenrief stopped working because of severe back pain and was restricted to less than full range of sedentary work as of Dr. Tata's July 2008 report.[50] It is unclear which July 2008 report of Dr. Tata that Mrs. Bognerief's representative was referring to. Mrs. Bogenrief testified to her background and that the last time she worked was in February 2007.[51] When asked by ALJ Poulose whether she had sought employment since February 2007, Mrs. Bogenrief responded that she had not because she can only sit or stand for twenty to twenty-five minutes at a time.[52] Mrs. Bogenrief acknowledged that, per Dr. DePhillips orders, she tried to go back to work in August of 2007, but was unable to because she was not free to get up and move around.[53]

---

[45] 20 C.F.R. §404.1520
[46] *Id.*
[47] R. at 53.
[48] *Id.*
[49] R. at 51.
[50] R. at 55.
[51] R. at 57.
[52] R. at 58.
[53] R. at 71.

Mrs. Bogenrief testified that she last worked as a lab tech and that the position required her to stand most of the day.[54] Prior to her back injury, Mrs. Bogenrief testified that the heaviest weight she was able to lift was twenty liters, but she did not have to lift that weight a lot.[55] She testified that she was still able to drive, but only for up to thirty minutes.[56] Mrs. Bogenrief said that her typical day consists of her completing her physical therapy stretches, reading or watching TV while reclined on the couch and making dinner.[57] She indicated she was able to care for personal needs without assistance.[58] Although she makes dinner, Mrs. Bogenrief testified that her family does a majority of the cleaning and that she can move loads from the washer to the dryer, but does not carry the laundry baskets.[59] Mr. Bogenrief testified that he now helps Mrs. Bogenrief with chores she used to be able to do on her own.[60] Mrs. Bogenrief has stairs in her home, but testified that she is only able to go up and down with the assistance of the banister.[61] Mrs. Bogenrief said that she is able to go grocery shopping and can lift a gallon of milk, but gets assistance with heavier items.[62] Mrs. Bogenrief testified that she has lifted a twenty-four case of pop, but was not supposed to.[63]

Mrs. Bogenrief testified that she does not do much outside of the home because of her pain.[64] She testified that prior to her back injury she regularly participated in aerobics classes, bike riding and walking. Mr. Bogenrief also testified that Mrs. Bogenrief's pain restricts her activities outside of the home.[65] Mrs. Bogenrief said that she can walk around her neighborhood

---

[54] *Id.*
[55] *Id.*
[56] R. at 59.
[57] *Id.*
[58] R. at 60.
[59] *Id.*
[60] R. at 77.
[61] R. at 62.
[62] *Id.*
[63] *Id.*
[64] R. at 61.
[65] R. at 78.

block, but is sometimes limping by the time she gets home.[66] Mrs. Bogenrief testified that she continues to see Dr. Tata for pain management, but that her physical therapy ended December 2008.[67]

In regards to her treatment after her February 2008 surgery, Mrs. Bogenrief testified that although she regained her strength and flexibility back, the pain did not subside.[68] Mrs. Bogenrief describes her pain as a non-continuous ache across her lower back, mostly on the right side.[69] She said that ninety-five percent of the time she has pain down her right leg and her foot.[70] During the hearing she said that her toes were tingling.[71] She currently has a Duragesic patch, the dose is fifteen micrograms an hour and she takes 150 milligrams of Effexor for her back pain.[72] She also takes Lyrica, twice a day, for the pain in her leg.[73] She uses a TENS machine four to five days out of the week and even sleeps with it sometimes.[74] She says her TENS machine helps her deal with the pain, but that the pain is still there.[75] Mrs. Bogenrief testified that Dr. Tata discussed implanting a simulator to help address the pain, but she is reluctant to have it done since her surgery did not seem to help the pain.[76] Mrs. Bogenrief testified that none of her doctors have cleared her to go back to work.[77]

---

[66] R. at 61.
[67] R. at 62.
[68] R. at 63.
[69] *Id.*
[70] *Id.*
[71] *Id.*
[72] R. at 64.
[73] *Id.*
[74] R. at 68.
[75] R. at 66.
[76] R. at 65.
[77] R. at 70.

Next, the vocational expert, Julie Bose testified.[78] Ms. Bose testified that she was familiar with Mrs. Bogenrief's past work and had reviewed the file.[79] Ms. Bose classified Mrs. Bogenrief's work as a medical lab technician as light and skilled.[80] Ms. Bose testified that although there were medical lab technician positions that are sedentary, there were none that were both sedentary and had a sit-stand option.[81] When asked what positions Mrs. Bogenrief could perform with her sit-stand limitations, Ms. Bose responded she could perform sedentary and unskilled positions, such as a general office clerk or various telephone clerk positions.[82] Ms. Bose concluded there were over 3,600 positions that Mrs. Bogenrief could perform.[83]

Ms. Bose was then questioned by Mr. Ferguson. Mr. Ferguson posed the following question to her:

> Based on the statement by Dr. Tata...he's indicated that her consistent sitting was, or continuous sitting was limited to thirty minutes, continuous standing and walking to twenty minutes. That in an eight-hour day she would be restricted to only two hours total of standing and walking.... With those restrictions could she perform any of these jobs...with the sit-stand option?[84]

Ms. Bose responded, "No, that would preclude full-time employment," of any kind.[85] Mr. Ferguson also asked what the impact of her missing three days a month would be and Ms. Bose responded that would also "eliminate all work."[86] Mr. Bogenrief then testified to his observations of how the pain has effected Mrs. Bogenrief's activities, mostly substantiating Mrs. Bogenrief's testimony regarding her limitations.[87] After Mr. Bogenrief testified, ALJ Poulose closed the hearing.

---

[78] R. at 71
[79] R. at 72.
[80] R. at 73.
[81] *I d.*
[82] R. at 73-74.
[83] R. at 74.
[84] R. at 74-75.
[85] R. at 75..
[86] *Id.*
[87] R. at 76.

**B.      ALJ Poulose's October 28, 2009 Decision**

ALJ Poulose followed the standard five-step evaluation in determining whether Mrs. Bogenrief was disabled as of March 14, 2007.[88] As a preliminary matter, ALJ Poulose found that Mrs. Bogenrief meets the insured status requirements until December 31, 2012.[89] At step one, ALJ Poulose agreed with Mrs. Bogenrief that she "has not engaged in substantial activity since March 14, 2007."[90] At step two, ALJ Poulose characterized Mrs. Bogenrief's impairment as degenerative disc disease and found it to be severe.[91] However, at step three, ALJ Poulose found that Mrs. Bogenrief did not have an impairment or a medically equal impairment under listing 1.04 - Disorders of the Spine.[92] ALJ Poulose did not believe Mrs. Bogenrief's impairment was one of the listed impairments under listing 1.04 because she "did not demonstrate compromise of a nerve root" and "did not have the requisite neurological deficits... ."[93] In coming to her conclusion, ALJ Poulose stated that she relied on the State Agency Medical Consultants, but failed to identify the consultants by name or cite to an exhibit.

Having made it through the first three steps, ALJ Poulose then determined Mrs. Bogenrief's residual functional capacity ("RFC"). ALJ Poulose found that Mrs. Bogenrief had the RFC "to perform sedentary work," so long as Mrs. Bogenrief had the option to sit or stand.[94] Although ALJ Poulose found that Mrs. Bogenrief's impairment could cause her symptoms, she did not find Mrs. Bogenreif's statements regarding the intensity, persistence and limiting effects of her symptoms credible because they were inconsistent with reports from Dr. Johnson and Dr.

---

[88] R. at 13.
[89] R. at 15.
[90] *Id.*
[91] *Id.*
[92] *Id.*
[93] *Id.*
[94] R. at 16.

Tata.[95]  In making her determination regarding Mrs. Bogenrief's RFC, ALJ Poulose gave weight to Dr. DePhillips' August 14, 2007 notes that Mrs. Bogenrief could return to work and gave little weight to Dr. Tata's reports.[96] ALJ Poulose gave little weight to Dr. Tata because she found that it was inconsistent with Mrs. Bogenrief's own testimony.[97]

Despite finding that Mrs. Bogenrief had the RFC to perform sedentary work, at step-four, ALJ Poulose found that Mrs. Bogenrief was unable to perform her past relevant work as a medical lab technician.[98] ALJ Poulose based her conclusion on Ms. Bose's testimony that Mrs. Bogenrief's work as a medical lab technician was light work and not sedentary work. Finally, at step-five, ALJ Poulose found that there were other jobs that Mrs. Bogenrief could perform. Based on Ms. Bose's testimony, ALJ Poulose found that Mrs. Bogenrief could "perform the requirements of representative occupations" (i.e. office clerk, telephone clerk, and beverage clerk) with the limitations of needing to sit or stand.[99] Relying on Ms. Bose's testimony, ALJ Poulose rejected Mrs. Bogenrief's argument that these positions would be unable to accommodate her need to frequently alternate between sitting and standing.[100] As a result, ALJ Poulose found that Mrs. Bogenrief was not considered disabled for the purpose of receiving DIB.[101]

## STANDARD OF REVIEW

The Court will uphold the ALJ's decisions if it is supported by substantial evidence and is free from legal error.[102] Substantial evidence means "such evidence as a reasonable mind might accept as adequate to support a conclusion."[103] Where conflicting evidence allows

---

[95] R. at 17.
[96] R. at 18.
[97] *Id.*
[98] R. at 19.
[99] *Id.*
[100] *Id.*
[101] *Id.*
[102] 42 U.S.C. §405(g).
[103] *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner and not the courts.[104] However, the decision of the Commissioner is not entitled to unlimited judicial deference. An ALJ must minimally articulate his or her reasons for crediting or rejecting evidence of disability.[105] The Court will conduct a critical review of the evidence and will not uphold the ALJ's decision if it lacks evidentiary support or an adequate discussion of the issues.[106]

ANALYSIS

Mrs. Bogenrief argues that ALJ Poulose's decision should be remanded because ALJ Poulose erred by (1) not properly assessing Mrs. Bogenrief's RFC because she did not find Mrs. Bogenrief credible and discounted Dr. Tata's opinion; (2) not considering pain as a limiting factor; (3) not finding that a closed period of disability supports a disability determination; and (4) failing to update the record between January 14, 2009 and November 5, 2009. The Commissioner argues that ALJ Poulose's decision is supported by substantial evidence because ALJ Poulose properly discounted Dr. Tata's opinions as not being consistent with the record. The Commissioner also claims that her RFC assessment was consistent with Mrs. Bogenrief's credible limitations and that the burden to update the record lies with Mrs. Bogenrief, not the Commissioner.

A.      RFC Assessment

In assessing Mrs. Bogenrief's RFC, the ALJ made two credibility determinations: that of Mrs. Bogenrief and of Dr. Tata. The Court will address each of them in turn.

---

[104] *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990) (*quoting Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).
[105] *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992).
[106] *Clifford v. Apfel*, 227 F.3d 863, 839 (7th Cir. 2000).

## 1. Mrs. Bogenrief's Credibility

Mrs. Bogenrief argues that ALJ Poulose's credibility determination about her was erroneously based on the ALJ's comparison of Mrs. Bongenrief's testimony regarding her ability to complete daily household activities compared to the activities she would be expected to complete at work. The Commissioner argues that ALJ Poulose's credibility determination was proper because her subjective complaints were not supported by the objective evidence or the overall record.

"Credibility determinations are due special deference."[107] In determining whether a claimant's subjective complaints are credible, the ALJ is entitled to view them in light of the objective medical evidence in the record.[108] The Court should only reverse the ALJ's credibility determination "if the claimant can show it was 'patently wrong'."[109] Subjective complaints need not be fully supported by the evidence, but the lack of support may be probative of the claimant's credibility.[110]

ALJ Poulose based her credibility determination on four sources: (1) Mrs. Bogenrief's statements made in March 2008, after her surgery; (2) her testimony about her personal activities; (3) Dr. DePhillips's August 14, 2007 opinion that Mrs. Bogenrief could return to work; and (4) the progress of Mrs. Bogenrief's pain from February 15, 2008 until September 2008, including Dr. Tata's July and September physical therapy progress reports.[111]

In considering Mrs. Bogenrief's credibility, ALJ Poulose observed that the February 2008 post-surgery doctor's notes indicated that Mrs. Bogenrief was able to walk with assistance

---

[107] *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) (*citing Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004).
[108] *Id.*
[109] *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000) (*citing Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990).
[110] R. at 17.
[111] *Id.*

without pain and that by March 2008 Mrs. Bogenrief reported no further back pain.[112] ALJ Poulose noted that her condition continued to improve and Mrs. Bogenrief only reported intermittent back pain in May and June of 2008.[113] Finally, ALJ Poulose relied on Dr. Tata's July and September 2008 physical therapy reports that noted Mrs. Bogenrief reported decreased pain in her back and lower extremity.[114] Therefore, ALJ Poulose concluded that Mrs. Bogenrief's "statements concerning the intensity, persistence and limiting effects of [her] pain" were not credible to the extent they contradicted the reports of Dr. Johnson and Dr. Tata.[115]

ALJ Poulose sufficiently supported her credibility determination with the objective evidence in the record. While ALJ Poulose acknowledged Mrs. Bogenrief's testimony about her daily activities, her credibility determination was not based on a comparison between Mrs. Bogenrief's ability to do daily household activities and the activities that she would be expected to do at work. ALJ Poulose's credibility determination was based on the reports from Mrs. Bogenreif's own doctors that documented Mrs. Bogenrief's reports of pain subsequent to her February 2008 surgery. Mrs. Bogenrief has failed to show that ALJ Poulose's credibility determination was patently wrong or not supported by the evidence.

## 2. Dr. Tata's Opinion

In addition to finding that some of Mrs. Bogenrief's comments were not credible, ALJ Poulose also discounted Dr. Tata's opinion regarding Mrs. Bogenrief's ability to sit and stand when determining her RFC. The Commissioner argues that it was proper for ALJ Poulose to give Dr. Tata's opinion little weight because it was not supported by the overall record.

---

[112] *Id.*
[113] *Id.*
[114] *Id.*
[115] R. at 17.

In the last step of the sequential process used to determine disability, the ALJ must determine whether the claimant is able to perform other work based on her RFC.[116] In determining a claimant's RFC, the ALJ should look at the claimant's ability to do physical and mental work on a sustained basis, considering the claimant's limitations.[117] The ALJ should give the opinion of a treating physician controlling weight if it is supported by other substantial evidence.[118] The ALJ must build a logical bridge from the evidence relied on to her conclusion.[119]

As noted above, ALJ Poulose relied on two of Dr. Tata's reports to discount statements made by Mrs. Bogenrief: (1) Dr. Tata's progress report dated July 2008; and (2) Dr. Tata's progress report dated September 2008.[120] But later in her decision ALJ Poulose gave little weight to Dr. Tata's July 16, 2008 Lumbar Spine RFC report (prepared for Mrs. Bogenrief's initial application for DIB). The problem is, this RFC report included the same opinions that Dr. Tata documented in his July and September 2008 reports, which ALJ Poulose relied on.[121] For example, Dr. Tata noted: (1) Mrs. Bogenrief can sit for thirty minutes; (2) she can stand for twenty minutes; (3) she can sit, stand and walk for a total of two hours in an eight hour period; (4) she would require ten to fifteen minute breaks every forty to sixty minutes; (5) she would be absent up to three days a month; (6) she did not require an assistive device to ambulate; (7) she could frequently lift less than ten pounds; and (8) she was limited in her ability to bend and twist.[122] ALJ Poulose acknowledges these findings, but then states, "[t]his opinion was given little weight because it was not consistent with the claimant's own testimony...[and] is not

[116] 20 C.F.R. §404.1520.
[117] *Id.*
[118] *Zurawski v. Halter*, 245 F.3d 881 (7th Cir. 2001) (*citing Clifford v. Apfel*, 227 F.3d 863 (7th Cir. 2000)).
[119] *Dixon*, 270 F.3d at 1176.
[120] *Id.*
[121] R. at 18.
[122] R. at 683-685.

supported by his treating records."[123] ALJ Poulose supports this statement by noting that no where in Dr. Tata's records does it indicate that Mrs. Bogenrief would be absent three times a month.[124]

This is true: Mrs. Bogenrief being absent three days a month is not reflected in the record. But her rejection of the remaining portion of Dr. Tata's RFC report is not sufficiently explained.[125] What is troubling is that Dr. Tata's RFC report, that Mrs. Bogenrief can only sit for thirty minutes and stand for twenty minutes, is supported by the two reports that ALJ Poulose relied on to discredit Mrs. Bogenrief. Dr. Tata's RFC opinion that she could frequently lift less than ten pounds and that she was limited in her ability to bend and twist are also supported Dr. Tata's September 2008 report, which states that Mrs. Bogenrief should use free weights in her home exercises and that she has difficulty returning to a standing position after bending.[126] ALJ Poulose failed to explain why she relied on these opinions in Dr. Tata's progress report to discredit Mrs. Bogenrief, but then affords them little weight when they are incorporated into Dr. Tata's RFC report.

The weight given to Dr. Tata's opinion is important in light of the testimony given by Ms. Bose, the VE, regarding Mrs. Bogenrief's RFC and the jobs that she could perform. Ms. Bose was asked to consider what type of work Mrs. Bogenrief could perform given her limitation to only sit for thirty minutes and stand or walk for twenty minutes. Ms. Bose testified that it "would preclude full-time employment."[127] But because the ALJ failed to explain why she discounted an opinion of Dr. Tata's that she previously relied on, we do not know the impact of

---

[123] R. at 18.
[124] *Id.*
[125] R. at 812, 816.
[126] R. at 816-817.
[127] R. at 74-75.

Dr. Tata's opinion on Mrs. Bogenrief's RFC, in light of Ms. Bose's testimony that such limitation would prevent employment. It seems that ALJ Poulose did not build a logical bridge between the evidence she relied on and her conclusion. She also failed to explain why she did not give Dr. Tata's opinion controlling weight when it was supported by evidence in the record. Without more explanation, we do not know how ALJ Poulose assessed Mrs. Bogenrief's RFC or whether she did so properly.

Though the Court has found a basis to remand ALJ Poulose's decision, the Court will address the remaining arguments raised by the parties.

## B.    Pain as a Limiting Factor

Mrs. Bogenrief argues that ALJ Poulose erred in failing to properly consider pain as a limiting factor when determining whether Mrs. Bogenrief had an impairment or combination of impairments that meets or medically equals one of the listed impairments. Mrs. Bogenrief argues that ALJ Poulose should have evaluated pain as a limiting factor after her surgery and after each procedure done in an attempt to ease Mrs. Bogenrief's pain. The Commissioner responds that ALJ Poulose properly determined that Mrs. Bogenrief's degenerative disc disease did not meet or medically equal a listed impairment.

When evaluating pain as a limiting factor, the ALJ must consider: (1) whether the "medically determined impairment could reasonably be expected to produce [the claimant's] symptoms; and (2) all of the available evidence of the pain's intensity and persistence.[128] The ALJ should not reject the claimant's statements about intensity and persistence just because the available objective medical evidence does not support it.[129] However, the ALJ may consider inconsistencies between the claimant's statements and the objective evidence.[130]

---

[128] 20 C.F.R. §404.1529.
[129] *Id.*
[130] *Id.*

Here, ALJ Poulose did not consider the impact of Mrs. Bogenrief's pain after each surgery or procedure. Instead, ALJ Poulose evaluated Mrs. Bogenrief's pain limitations as of the date of the hearing. Mrs. Bogrenrief has failed to cite to any authority that mandates an ALJ to look at individual incidents of pain when evaluating the current pain limitation of a claimant. ALJ Poulose properly considered pain as a limiting factor because she looked at all of Mrs. Bogenrief's symptoms in the context of Mrs. Bogenrief's statements and the medical evidence available. ALJ Poulose was not required to assess the impact of Mrs. Bongenrief's pain after every surgery or procedure she had done.

## C.    Closed Period of Disability

Mrs. Bogenrief argues that ALJ Poulose should have found her disabled because Dr. Vincent, the State Agency Medical Consultant, stated that Mrs. Bogenrief was disabled at the time of filing and would be disabled for at least a year.[131] Mrs. Bogenrief argues that Dr. Vincent's statements support a closed period of disability which in turn supports a finding of disability. The Commissioner does not directly respond to this argument, but states that despite Dr. Vincent's findings of lesser limitations, ALJ Poulose actually gave Mrs. Bogenrief the benefit of the doubt and placed higher limitations on Mrs. Bogenrief's ability to perform work related tasks.

First, the only law provided on this point is provided by Mrs. Bogenrief. Mrs. Bogenreif cites to the case *McDonald v. Bowen*[132] for the proposition that an impairment that is expected to last for twelve months supports a disability.[133] However, *McDonald* deals with the ALJ's analysis under step one and the issue of whether a trial work period would preclude disability

---

[131] R. at 617.
[132] 818 F. 2d 559 (7th Cir. 1986).
[133] Mrs. Bogenrief's Mot. [dkt 21], p. 12.

benefits. In order to be entitle to a finding of disability, the ALJ must find that Mrs. Bogenrief's alleged impairment lasted for a continuous period of at least twelve months.[134] In this case, ALJ Poulose found in Mrs. Bogenrief's favor at step one and found that she had not engaged in any substantial activity since March 14, 2007. Mrs. Bogenrief's argument that her disability would last longer than twelve months does not, standing alone, entitle her to a finding of disabled or remand of ALJ Poulose's decision.

## D.    Updating the Record

Mrs. Bogenrief also argues that ALJ Poulose had an obligation to supplement the record between January 14, 2009 and October 28, 2009, the period between the hearing and issuance of her decision. Mrs. Bogenrief points out, as an example, that her December 2008 physical therapy records are not included, but should have been included. The Commissioner argues that Mrs. Bogenrief bears the burden of updating her medical records and failed to do so.

The Commissioner is correct that Mrs. Bogenrief bears the burden of producing records to support her claim of disability.[135] However, the ALJ must fully and fairly develop the record.[136] It is within the discretion of the ALJ to determine what additional evidence is needed.[137] In order for this Court to "order additional evidence to be taken before the Commissioner," Mrs. Bogenrief must show that the evidence is new, material and that she had good cause for failing to include it in the first instance.[138] "New" evidence must not have existed "at the time of the administrative proceeding."[139] The evidence is "'material' if there is a 'reasonable probability' that the ALJ would have reached a different conclusion" in light of the

---

[134] 20 C.F.R. §§ 404.1505 and 404.1509.
[135] *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008).
[136] *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997).
[137] *Luna v. Shalala*, 22 F.3d 687, 692 (7th Cir. 1994).
[138] *Schmidt v. Barnhart*, 395 F.3d 737, 741 (7th Cir. 2005).
[139] *Id.* (citing *Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997).

new evidence.[140] The Court should not remand the ALJ's decision if Mrs. Bogenrief fails to sustain her burden.[141]

It is only now that Mrs. Bogenrief requests that her December 2008 physical therapy records be considered and any records between January 2009 and October 2009 be allowed.[142] Mrs. Bogenrief did not make a request to ALJ Poulose to consider any additional information, nor did she request that the Appeals Council consider it. In regards to her December 2008 physical therapy records, Mrs. Bogenrief fails to establish that these records were unavailable at the time of the January 14, 2009 hearing. In addition, Mrs. Bogenrief fails to specify what records became available between January 2009 and October 2009 and how they are material to ALJ Poulose's decision. The case law is clear that Mrs. Bogenrief must do more than make conclusory allegations to establish her burden for new evidence. Accordingly, the Court finds that ALJ Poulose did not err in failing to update the record from January 14, 2009 to the date of her decision on October 28, 2009.

---

[140] *Id.* (*citing Johnson v. Apfel*, 191 F.3d 770, 776 (7th Cir. 1999)).
[141] *Id.*
[142] Mrs. Bogenrief's Mot. [dkt. 21].

CONCLUSION

For the reasons set forth above, the Court finds that ALJ Poulose's October 28, 2009 decision requires additional explanation regarding the weight accorded to Mrs. Bogenrief's treating physician, Dr. Tata. Accordingly, the Court grants Mrs. Bogenrief's Motion for Summary Judgment [dkt. 21] and remands the case for further proceedings consistent with this opinion. The Court denies the Commissioner's Motion for Summary Judgment [dkt. 23].

**IT IS SO ORDERED.**


**Date: March 27, 2012**

U.S. Magistrate Judge
Susan E. Cox